**STATE of Maine**

v.

**Barbara Thibodeau AYERS.**

Supreme Judicial Court of Maine.

Argued Sept. 23, 1983.

Decided Dec. 9, 1983.

James E. Tierney, Atty. Gen., Anita M. St. Onge (orally), Augusta, Wayne S. Moss, Herbert Bunker, Jr., Asst. Attys. Gen., for plaintiff.

Hall, DeSanctis & Schultz, Julio DeSanctis (orally), Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS, WATHEN and SCOLNIK, JJ., and DU-FRESNE, A.R.J.

McKUSICK, Chief Justice.

At her retrial on the charge of murder, 17–A M.R.S.A. § 201(1)(A), defendant Barbara Ayers was convicted by a Superior Court (Penobscot County) jury on January 28, 1982. On appeal, she argues that the presiding justice committed error in 1) admitting into evidence the prior testimony of her former co-defendant, Donald Ayers, under the exception to the hearsay rule stated in M.R.Evid. 804(b)(1), and 2) making a "preliminary ruling" that defendant's previously suppressed confession and murder weapon would be admissible in rebuttal if the defense were to introduce witnesses to testify in contradiction of the confession. We find no error in the admission of Donald Ayers' former testimony, and we agree with the State that the court made no ruling on the use of the rebuttal evidence that defendant is now in any position to question.

## I.

John Cheponis, former husband of defendant, was shot and beaten to death in his J–P Cash Market in Presque Isle on April 6, 1979. Defendant and Donald Ayers, whom she later married, were jointly indicted for murder and conspiracy. Both defendants testified at their joint trial held June 25 to July 2, 1980, in the Superior Court (Aroostook County). The jury found the defendants guilty on both counts of the indictment. On appeal, this court upheld the judgments of conspiracy, but set aside the convictions of murder, finding that a confession given by Barbara Ayers had been obtained in violation of her *Miranda* rights and that the murder weapon had been discovered as a result of that illegally obtained confession. *State v. Ayers,* 433 A.2d 356 (Me.1981). Donald Ayers was separately retried on the murder charge, and his conviction was recently affirmed by this court. *State v. Ayers,* 464 A.2d 963 (Me. 1983).

At Barbara Ayers' second trial on the murder charge, this time by herself, the defense sought and procured suppression of the confession and the pistol. Following the granting of her motions to suppress, the State, at the pretrial hearing, called Donald Ayers to testify. Mr. Ayers refused to answer any questions, even after the court found that he lacked a valid fifth amendment claim and ordered him to testify. The State then moved the court to admit into evidence, pursuant to M.R.Evid. 804(b)(1), portions of the testimony Donald Ayers had previously given when he was on trial jointly with Barbara Ayers. The court found that all the preconditions were met to the invocation of Rule 804(b)(1) in that Mr. Ayers was an "unavailable" witness and that Barbara Ayers, at the former proceeding, had had "an opportunity and similar motive to develop [his] testimony by direct, cross, or redirect examination." Therefore, portions of Mr. Ayers' former testimony describing the murder plot, the procurement of the murder weapon, and the commission of the crime were read to the jury, over Barbara's continuing objection.

Defendant Barbara Ayers now assigns error to the court's ruling on the admissibility of the former testimony. She asserts that she lacked the requisite "similar motive" to examine Mr. Ayers at the two trials and that therefore the Rule 804(b)(1) exception was not properly applicable. Defendant's claim is that at her first trial, where her illegally obtained confession was improperly admitted, she was forced to employ the tactic of admitting, but then attempting to justify, the killing of John Cheponis. In contrast, she asserts that, at the second trial, with the confession suppressed, she planned to refrain from testifying herself and intended to attack the State's case by introducing circumstantial evidence to suggest that individuals other than herself had committed the crime. In fact, although she did not take the stand at her retrial, she never offered evidence pointing an accusatory finger at others.

■■■■ The presiding justice's findings of fact necessary for admissibility under the hearsay exception of Rule 804(b)(1)—namely, the unavailability of the witness and the opportunity and similar motive to examine—must be upheld unless clearly erroneous. *See State v. Caouette,* 462 A.2d 1171, 1175–76 (Me.1983); *State v. Hafford,* 410 A.2d 219, 220 (Me.1980). The justice could rationally conclude from the evidence that defendant had the same motive to challenge Mr. Ayers' testimony at the first trial, if it was not truthful, as she had at her second trial. His testimony implicated her in the murder of John Cheponis, and her guilt or innocence of that crime was the identical issue of both trials.

To support her argument that a "similar motive" was lacking, defendant finds her "greatest assistance" in a decision of a single trial judge: *United States v. Franklin,* 235 F.Supp. 338 (D.D.C.1964). Even if we were inclined to give much weight to one opinion of a single judge from another jurisdiction, we find *Franklin* readily distinguishable on its facts. In *Franklin,* a federal district judge found no similar motive to

examine where the government sought to introduce against a defendant testimony given by his former co-defendants at their previous joint trial. The judge on the facts of that particular case found that at the first trial the co-defendants' testimony "did not accuse the defendant" and that "a vigorous cross-examination of an associate might have reflected badly on the defendant." Accordingly, the judge concluded on the fact circumstances of Franklin's first trial that he had had "no real need or incentive to thoroughly cross-examine his then co-defendant[s]." 235 F.Supp. at 341. Such is not the case with Barbara Ayers. At both of her trials the all-encompassing question being tried was whether she was guilty of murder, and Donald Ayers' testimony pointed toward her guilt. It clearly did "accuse the defendant." The presiding justice at Barbara Ayers' second trial was fully entitled to discredit her assertion that her newly devised plan to pursue different tactics at her second trial precluded her from having a similar motive to cross-examine Mr. Ayers at both trials. Particularly is this true when as it turned out she never fully pursued her alleged change of tactics.

The "opportunity and similar motive" test of Rule 804(b)(1) has been usefully analyzed in terms of whether "an attorney making every effort within reason [at the prior trial] to bring out facts on behalf of his client *might* have developed the testimony fully." Martin, *The Former-Testimony Exception in the Proposed Federal Rules of Evidence,* 57 Iowa L.Rev. 547, 559 (1972) (emphasis in original). The author noted:

It is unfair to hold a party to the former examination if no reasonable attorney would be expected to have elicited the now-relevant facts; *but if the circumstances were such that those facts could have been brought out if they were available, the present opponent can fairly be held.*

*Id.* (emphasis added). The author further states that any inquiry into matters of tactical choice is precluded; that "it is . . . indisputable that no authority considers

them sufficient factors for excluding former testimony; the question is always phrased in terms of 'opportunity' and 'motive and interest,' rather than 'actual examination' and 'ability' to develop the testimony fully." *Id.* As so analyzed, the trial justice's preliminary determination on the admissibility of prior testimony is a fact-finding, subject to review only for clear error. We can find no such error in the admission against Barbara Ayers of the prior testimony of Donald Ayers directly incriminating her in the murder for which she was standing trial in both cases.

## II.

On the third day of Barbara Ayers' trial, defense counsel advised the court, out of the jury's presence, that he proposed to present, through the testimony of nine witnesses, evidence that would suggest that an individual or group of individuals, other than defendant, might have been guilty of the murder of John Cheponis. Defense counsel asked the court for a preliminary ruling whether defendant's use of this testimony would allow the State in rebuttal to introduce defendant's confession and the murder weapon, both previously suppressed, under the principle articulated in *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Defense counsel generally described what the witnesses' testimony would be and, without committing himself to the use of the suggested testimony, wanted the court to tell him if his strategy would backfire.

█ The presiding justice correctly advised defense counsel that it is not the duty of the court to make advisory rulings to assist counsel in planning trial tactics. As we indicated in *State v. Dodge,* 397 A.2d 588, 592–93 (Me.1979), a trial judge is perfectly justified in refusing to make a final ruling *in limine* on the admissibility of evidence, preferring instead to hear the testimony of the witnesses during the trial.

Although the court expressed an informal view that use of the witnesses' testimony might trigger the admissibility of the con-

fession and the pistol under *Harris,* the justice did not render a reviewable *in limine* ruling. On the contrary, the court warned defense counsel:

> I'm not at all sure that the issue of whether that is *Harris* material and appropriately admissible is generated on the basis of this preliminary showing or even one at which the people testified. I think that really the only way to generate that issue would be to do it and if there were an adverse result for you, discuss it then.

Despite this advice, defense counsel did not ask the nine proposed witnesses to testify, either before the jury or before the court. Absent a direct offer of proof, the court was under no obligation to make any formal or definitive ruling.

■ In addition, defendant fails to show that any prejudice in fact accrued to her, even if the court's advice were construed to be an *in limine* ruling. The State expressly raised an objection to the admissibility of the testimony of the proposed nine witnesses, on the basis of the balancing required by M.R.Evid. 403. That facially substantial objection was never ruled on, since the defense never put those witnesses on the stand or asked for a ruling from the court on the admissibility of the testimony of the nine witnesses. For all that can be known even today, defendant would in any event have been barred from presenting that testimony.

Since the court made no definitive *in limine* rulings, defendant has no basis for appeal on this second issue. We therefore find it unnecessary to consider a further question raised by defendant, the correctness of the court's informally expressed views on the application of *Harris v. New York.*

The entry is:

Judgment affirmed.

WATHEN and SCOLNIK, JJ., and DU-FRESNE, A.R.J., concur.

NICHOLS, Justice, dissenting.

I cannot agree with today's majority when in such cavalier fashion it permits the former testimony of a witness, Donald Ayers, to be admitted into evidence against the Defendant, Barbara Thibodeau Ayers, in this, her second trial for murder.

The witness's testimony at the earlier trial was nothing but hearsay at this trial. Its admission into evidence by the Superior Court was a violation of the Defendant's right of confrontation guaranteed to her by Amendment VI (through Amendment XIV) of the United States Constitution.

In a very limited way our Maine Rules of Evidence (tracking the Federal Rules of Evidence in this particular) permit the testimony of a witness given at a former trial to come in when the declarant is unavailable as a witness. Our rules provide that such hearsay is not excluded by the hearsay rule only if the party against whom the testimony is offered at the second trial

> had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. M.R.Evid. 804(b)(1).

The central issue here is whether the Defendant had a "similar motive" to cross-examine this witness at an earlier time when he and she were being jointly tried for murder. The answer is that the Defendant did not.

The counsel who represented her at the first trial defended on the grounds of justification. He had no reason in that trial vigorously to cross-examine this witness as to the Defendant's role in the slaying. Nor did he do so. Months later in a second trial the Defendant was represented by new counsel. It is clear from the record that at the second trial new counsel grounded their defense on a different issue entirely—whether there was insufficient evidence that it was the Defendant who killed the victim. On this issue cross-examination of Donald Ayers became of critical importance to the Defendant.

The "motive" had become dramatically dissimilar, yet today's majority gloss over that difference.

First, it is simplistic indeed to suggest, as the majority does, that guilt or innocence was "all-encompassing" and "the identical issue of both trials." They close their eyes to the fact that if a *new* trial is to be just that, client and counsel must have the opportunity to decide anew the trial strategy to be pursued.

Second, after the defense has settled upon their strategy for a jury trial, it is unrealistic to imply, as today's majority does, that instead of presenting their case in the manner and with a selectivity counsel deem most persuasive to the jury, they must digress by cross-examining witnesses at length on matters not relevant to the issues of the day, all at the peril that at some possible second trial the witnesses' former testimony would be admitted on the "all-encompassing" issue of "guilt or innocence." Jury persuasion becomes subordinated to making a record for an appellate court.

Even before the rulemakers inserted this requirement of "similar motive" to develop the testimony by cross-examination, it had been recognized that where a defendant has had no opportunity to cross-examine that is "full, substantial and meaningful in view of the realities of the situation," the former testimony is not excludable from the hearsay rule. *United States v. Franklin,* 235 F.Supp. 338, 341 (D.D.C.1964).

Since this requirement was codified in Fed.R.Evid. 804(b)(1) rare has been the case decided under that rule on "similar motive"

grounds. For two cases decided under that rule at least in part on "similar motive" grounds, see *Black Hills Jewelry Manufacturing Co. v. Gold Rush, Inc.,* 633 F.2d 746, 752–3 (8th Cir.1980); *Hewitt v. Hutter,* 432 F.Supp. 795, 799 (W.D.Va.1977); *aff'd.* 568 F.2d 773 (4th Cir.1978).[1]

To admit into evidence at this second trial of the Defendant the former testimony here challenged certainly offends the rule and violates as well her constitutional right to be confronted by the witnesses against her.[2] In view of the realities of the situation, with a different defense being pressed in the first trial, the Defendant had no meaningful opportunity at that time to cross-examine on the issue being urged in the second trial. The former testimony remains pure hearsay, and its admission at this second trial offends the Defendant's right of confrontation.[3]

Years ago, when a somewhat different issue was joined in a second case, our Court had occasion to observe that "[c]ross-examination upon the one issue might differ from cross-examination on the other." *Ellsworth v. Waltham,* 125 Me. 214, 216, 132 A. 423 (1926). That observation is pertinent here today.

When this Defendant's defense was justification, as it was in her first trial, no reasonable attorney, striving to focus the jury's attention on the validity of this defense, could be expected to have diverted the fact finders' attention by a lengthy cross-examination of Donald Ayers on matters irrelevant to this defense.

---

1. *See generally* 4 *Weinstein's Evidence* ¶ 804(b)(1)[04] (1981).

2. *See Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980); *Pointer v. Texas,* 380 U.S. 400, 407, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923 (1965); *Mattox v. United States,* 156 U.S. 237, 244, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895).

3. Just as the issue is novel in this jurisdiction, so few, indeed, have been the cases which have tested the federal equivalent, Fed.R.Evid.

804(b)(1), in a second trial situation; most involved challenges to the admission of testimony first given at some preliminary hearing. The case before us is unique in that it is conceded that at the first trial certain constitutional safeguards to which this Defendant was entitled had been infringed. If her in-court confession was a "fruit of the poisonous tree" as our Court indicated in *State v. Ayers,* 433 A.2d 356 (Me.1981), why was not Donald Ayers' prior testimony, which followed that confession and suffers from the same constitutional infirmity, every bit as much a fruit of that tree?

I advert to the same sentence from Professor Martin's law review article as does the majority:

> It is unfair to hold a party to the former examination if no reasonable attorney would be expected to have elicited the now-relevant facts; but if the circumstances could have been brought out if they were available, the present opponent can fairly be held.

Martin, *The Former-Testimony Exception in the Proposed Federal Rules of Evidence,* 57 Iowa L.Rev. 547, 559 (1972). However, I submit that it is the first clause of that sentence which is pertinent here, and not the second clause, which the majority underscores.

As an eminent authority declares, "When the issue to which the former testimony is directed in the subsequent proceeding was not an issue in the earlier proceeding, then the similar motive requirement will not be satisfied." 11 *Moore's Federal Practice* 270 (1982). *See Peterson v. United States,* 344 F.2d 419 (5th Cir.1965) (former testimony not admissible when a new issue of conspiracy was joined at the second trial).[4]

In sum, the majority's interpretation of Evid.R. 804(b)(1) drains all meaning from the words "similar motive." Surely, the federal rulemakers introduced this phrase for a purpose.[5] I would interpret "similar motive" in a way that makes those words a vital safeguard of defendants' right of confrontation. I would conclude that the "similar motive" requirement was not satisfied in the case before us. I would vacate the judgment of conviction.

---

**4.** *See also United States v. Wingate,* 520 F.2d 309 (2d Cir.1975), *cert. denied,* 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1976) (issue at a suppression hearing held to be so different from issue at subsequent trial as not to exclude former testimony from the hearsay rule).

**5.** The impetus for making "similar motive" an express requirement of the new rule may have been found in McCormick, *Evidence* (2d ed. 1972) 622, where the author had stressed that the opponent of the prior testimony must in the earlier trial have had an "adequate motive" for testing on cross-examination the challenged testimony.