# OLDENBURG & KELLEY *vs.* WM. C. DORSEY.

*Appeal by one of Several Defendants in Action at Law—Summons and Severance—Dismissal of Appeal—Guaranty—Joint Promise to Pay for Goods Delivered to one Promisor not Within the Statute of Frauds—Original Undertaking—Instructions to the Jury.*

An appeal from a judgment entered against two or more persons jointly must be taken by all of the defendants.

If one of the defendants only wishes to appeal he must apply to the Court of Appeals for a writ of summons and severance.

In this case two of the three defendants against whom a joint judgment had been entered took an appeal without having first obtained a judgment of severance. No motion to dismiss the appeal was made but the case was fully argued on its merits. Since it is determined that there was no reversible error in the rulings of the trial Court, the appeal is dismissed, without ordering a writ of summons and severance, no injury being thereby occasioned to either party.

A joint promise by two persons in respect of a transaction for the benefit of one of them is not a guaranty within the Statute of Frauds.

When the person to whom goods are sold and delivered and another person, who before the sale orally agreed to be bound for the price, are sued together as joint original promisors, the action is not to be defeated as to the latter by showing that credit for goods was given partly to one and partly to the other defendant, as the Statute of Frauds does not extend to a joint promise by two persons for the benefit of one of them.

When materials are supplied to A upon the faith of a promise by him and by B to pay for the same then B is liable on such promise, although the credit was not given by the seller to him exclusively.

The defendant O, the owner of land, employed the other defendant B, to erect houses thereon; B applied to the plaintiff, a lumber dealer, for the materials needed in the construction and received from him an estimate of the cost. According to plaintiff's evidence, he refused to sell to B until O expressly promised plaintiff to pay for all lumber furnished by him, and said that plaintiff should hold him, O, as well as B, for the amount. The defendant, O, denied having made any promise. *Held*, that, if the plaintiff's evidence be found by the jury to be true, both defendants are liable for the material supplied to the defendant B under the contract, and the promise of O is not within the 4th section of the Statute of Frauds since his main object was not to pay a debt of B's, but to subserve a purpose of his own, and since a joint promise for the benefit of one of the promisors is also not within the statute.

A prayer instructing the jury as to the legal effect of an agreement in writing, therein referred to, will be held to have been properly rejected when the agreement is not in the record, since the rulings of the trial Court are presumed to be correct unless there is something in the record to show the contrary.

In an action against the owner of land and a contractor for the erection of houses thereon to recover the price of materials furnished upon their joint promise to pay for the same, the jury were instructed by one prayer that the contractor was entitled to recoup against plaintiff's claim such sum as they found the defendant lost by reason of delay in furnishing the material. *Held*, that another prayer instructing the jury that the owner is entitled to recoup against plaintiff's claim such sum as was lost by such delay was properly rejected, because it would be misleading after granting the other prayer and because there was no evidence of an agreement to furnish the materials to the owner as rapidly as wanted, and any recoupment allowed by the jury would reduce plaintiff's claim against both defendant's jointly.

Appeal from the Circuit Court for Baltimore County (Fowler, C. J., and Van Bibber, J.)

*Plaintiff's 2nd Prayer.*—If the jury shall find that Oldenburg & Kelly, defendants, undertook the construction and repair of certain houses on lots owned by them and that George Billings was employed in the construction and repair of said buildings and he submitted proposals for furnishing material for the same and accepted the proposal and estimate of the plaintiff for a portion of said material; and further that plaintiff declined to furnish said material upon the credit of said Billings and sought information of the Canton National Bank as to the credit of said Billings and of said Oldenburg & Kelly and that acting upon the information so received that said Billings was not responsible, but that said Oldenburg & Kelley were responsible, he saw Oldenburg, one of the firm, and was directed by said Oldenburg prior to the time of furnishing any of said material that he should go ahead and deliver said material upon the order of said Billings, and that Oldenburg promised to pay for the material so furnished, then the said Oldenburg & Kelley as defendants are liable in this action for whatever material the jury shall find were furnished by plaintiff for said houses, provided the jury find said material was furnished according to contract. (*Granted.*)

*Plaintiff's 6th Prayer.*—If the jury believes from all the evidence in the case, that the defendants, Oldenburg & Kelley, were partners and find that the ordering of the lumber and building material described in the evidence was done by one of the members of the firm for the welfare of the partnership and in the usual and ordinary way of the firm's business in buying lumber and building material for the erection of houses at Highland avenue and Gough streets, Highlandtown, then the partnership was responsible for said ordering, if the jury finds such orders were given, even though they further find that one of the partners knew nothing of the transaction with the plaintiff described in the evidence at the time the same was consummated, if they so find, and if they further find the lumber and building material mentioned in evidence was delivered to said firm as directed by the defendant Oldenburg on the faith and credit of said order, if any, and find that the material was accepted by said firm and payment has not been made for the same to the plaintiff, then their verdict must be for the plaintiff as against the defendant firm of Oldenburg & Kelley for such sum as the jury shall find to be due and unpaid, if the jury further find that the plaintiff did not cause delay or loss to the defendants, Oldenburg & Kelley, by delay in delivering materials in evidence. (*Granted.*)

*Defendant's 4th Prayer.*—The defendants, Oldenburg & Kelley, pray the Court to instruct the jury that if they shall find from all the evidence in the case, that the goods mentioned in the bill of particulars, offered in evidence were sold and delivered to the defendant, George Billings, at his instance and request and upon his credit, then the plaintiff is not entitled to recover against the said defendants, Oldenburg & Kelley, in this action. (*Granted.*)      .

*Defendant's 5th Prayer.*—The defendants, Oldenburg & Kelley, pray the Court to instruct the jury that if they shall find from the evidence that credit was given the defendant Billings at the time of the acceptance of the estimate offered in evidence and shall further find that the defendants, Oldenburg & Kelley, guaranteed the payment of the sum mentioned in

said agreement, then the said guarantee was a collateral undertaking on the part of the defendants, Oldenburg & Kelley, and under the pleadings in this case the plaintiff is not entitled to recover against them. (*Refused.*)

*Defendant's 6th Prayer.*—The defendants, Oldenburg & Kelley, pray the Court to instruct the jury that if they shall find from the evidence that the agreement in writing offered in evidence to furnish materials to be used in the houses of Oldenburg & Kelley for the sum of $1,750 and the supplement to said agreement to furnish the said materials as rapidly as wanted, was accepted and entered into originally between the plaintiff and the defendant, George Billings, then their verdict, under the pleadings in this case, must be for the defendants, Oldenburg & Kelley. (*Refused.*)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*John H. Richardson,* for the appellants.

*John S. Ensor,* for the appellee.

BOYD, J., delivered the opinion of the Court.

This action was brought by the appellee against the appellants *and George Billings.* Judgment was rendered against all the defendants, but Mr. Billings did not appeal. It is well settled in this State that when a judgment is rendered against several persons jointly all must unite in an appeal. *Poe Practice,* sec. 825 and cases there cited. The rule was applied in *Lovejoy* v. *Irelan,* 17 Md. 525, to an appeal from a decree of a Court of equity, but that was subsequently changed by statute. The rule, however, remains unchanged as to cases at law as the statute only embraced appeals from final decrees, and orders in the nature of final decrees, passed by Courts of equity. The proper practice for the appellants was to apply to this Court for a writ of summons and severance, *Mottu* v. *Primrose,* 23 Md. 482, but no such application was made. Upon service of that writ Billings could have come into this

Court and united in the appeal, or, upon his refusal to do so, a judgment of severance could have been passed by this Court. *Cumberland C. & I. Co.* v. *Jeffries*, 27 Md. 535. The appellee did not make a motion to dismiss the appeal and the attention of the appellants was n,t called to this difficulty at the hearing. In passing on a motion to dismiss in *Mottu* v. *Primrose, supra,* our predecessors overruled it and ordered a writ of summons and severance to issue and, as the case was fully argued, we concluded to consider it on its merits, as, under the circumstances, injustice might have been done the appellants if we dismissed their appeal without giving them an opportunity to move for a severance, although we do not mean this to be taken as a precedent which must be followed in all similar cases. As we have reached the conclusion that there were no reversible errors in the rulings of the Court below, no injury will be done either side by dismissing the appeal, but if we had determined otherwise, the appellants could not have gotten the benefit of it unless we had postponed a decision of the case on the merits until after the writ of summons and severance had been issued, and the proceedings thereunder disposed of. For, inasmuch as the judgment is against Billings and the appellants jointly, he would have the right to determine whether he would unite in the appeal and thus have the judgment of this Court for or against the three defendants jointly, or whether he would refuse to do so and thereby enable this Court to order a severance. It is clear, therefore, that before we could properly enter up a judgment of affirmance or reversal of the judgment below, it would be necessary to issue a summons for Billings, unless he voluntarily appeared, to determine whether there should be a severance. Having sufficiently referred to this question to explain the reasons for the action we will take, we will now consider the rulings of the Court below.

The appellee was engaged in the lumber business, and George Billings, who was a carpenter and builder, was employed in the erection of some houses for the appellants, Oldenburg & Kelley, who were partners. According to the ap-

pellee's testimony he sent to Billings an estimate of the cost of the lumber wanted, and Billings agreed to the price, but the appellee refused to deliver the lumber unless he knew where the money was to come from. Billings told him that Oldenburg & Kelley would attend to that, whereupon the appellee saw Mr. Oldenburg and told him what Billings said. The most important part of the testimony is thus stated in the record: "I said, now, Mr. Oldenburg, will you give me an order for these goods, and he (Oldenburg) said: Mr. Dorsey, you deliver these and I will pay for them, or we will pay for them, everything that goes in those buildings we will pay for. You mean to say you will pay me. Yes, I will. I understand you will pay me for the goods when delivered. Oldenburg replies, yes. You charge them to Billings, we are responsible for them, and I give you an order for it, *therefore you will hold me as well as Billings for the amount.*" That was denied by Billings and Oldenburg, but the lumber was furnished and charged to "George Billings, for Oldenburg & Kelley, Highland Ave., near Gough St." A verdict was rendered in favor of the appellee. During the trial exceptions were taken to granting the second and sixth prayers of the plaintiff and to the rejection of the defendants' third, fifth, sixth and eighth.

The plaintiff's two prayers related to the liability of Oldenburg & Kelley and properly submitted the question to the jury, according to the theory of the plaintiff. It was contended by the appellants that a "paper writing" which passed between Dorsey and Billings was the foundation of the contract between them, and as these prayers ignored that contract, they were liable to mislead the jury. A sufficient reply to that suggestion is that this "paper writing" is not in the record, and hence we cannot determine its effect. So far as the record discloses the only writing between them was an estimate for the lumber, and if there was anything in that which showed the terms of the proposed sale, who was to be responsible for payments, whether the sale was to be made without security, or anything else that the appellants supposed material, it should have been

included in the record. The mere statement that the appellee submitted an estimate to Billings, and he accepted it, is manifestly insufficient to show a binding contract on Dorsey to deliver the lumber to him, regardless of his ability to pay for it, or the liability of the owners of the building for it, if, as the plaintiff claimed, they obligated themselves for it.

The defendants' *third* prayer asked the Court to instruct the jury that the plaintiff could not recover from Oldenburg & Kelley; unless the jury found that the materials were sold and delivered to them "upon their special and exclusive credit." It must not be forgotten that this was an action against the three defendants, as joint original promisors. The declaration contains the common counts against "George Billings, individually, and August J. Oldenburg and John B. Kelley, co-partners trading as Oldenburg & Kelley." The theory of the plaintiff was that Billings and this firm were jointly liable, and his testimony tended to establish that fact, as will be seen by that already quoted and other portions of it in the record. We said in the opinion delivered on a motion for reargument in the case of *East Baltimore Lumber Company* v. *Waldeman et al.*, 100 Md. 689, filed April 12th, 1905, that "In cases where the person to whom the goods were sold and delivered and the one who orally undertook to be bound for their price are sued together, as joint original promisors, the action will not be defeated as to the latter by showing that credit for the goods was given partly to one and partly to the other defendant, as the Statute of Frauds does not extend to a joint promise by two persons for the benefit of one of them." We cited 29 *Am. & Eng. Ency of Law* (2 ed.) 923–4. If it was a joint promise of both for the benefit of the two, as to which there was some evidence from which that could be inferred, the plaintiff's case was still stronger. The distinction is made on those pages of the Encyclopedia between the liability on an oral promise in respect of a transaction *for the benefit of a third person*, and that on a joint undertaking by two persons *for the benefit of one of them.* See also *Browne on Stat. of Frauds*, sec. 197.

In addition to what we have said above, it was held in *Small* v. *Schaefer*, 24 Md. 143, that "whenever the main purpose and object of the promisor is, not to answer for another but to subserve some purpose of his own, his promise is not within the statute, although it may be in form a promise to pay the debt of another." That was followed in *Little* v. *Edwards*, 69 Md. 499. Manifestly if the plaintiff's evidence was correct, the main purpose and object of Oldenburg & Kelley was not to answer for Billings, but to obtain the lumber for their own buildings, and hence was not within the statute. The *third* prayer was properly rejected.

The *fifth* was likewise properly rejected. In addition to what we have said above, much of which might be repeated as to this prayer, it is objectionable on other grounds. The evidence does not show "that credit was given the defendant Billings at the time of the acceptance of the estimate offered in evidence" *and* "that the defendants, Oldenburg & Kelley, *guaranteed* the payment of the sum mentioned in said agreement." On the contrary, the plaintiff's testimony tended to show that they were original promisors and not *merely* guarantors of the debt of Billings, while the defendants' evidence denied any promise or undertaking on their part. Then again, inasmuch as the law is as stated above, this prayer would have been altogether misleading, as it may be that credit was given to Billings but also to Oldenburg & Kelley.

It is only necessary to say in reference to the *sixth* that the "agreement in writing" and the "supplement to said agreement" therein referred to are not in the record, and the presumption is that there was nothing in them to justify the granting of the prayer, as the ruling of the Court is presumed to have been correct unless there is something in the record to show the contrary.

The *eighth* was properly rejected. The *seventh*, which was granted, instructed the jury that Billings was entitled to recoup against the plaintiff's claim such sum as they found *the defendant* lost by reason of the delay in furnishing the materials. The evidence tended to show that the plaintiff con-

tracted to furnish the materials *to Billings*, as rapidly as wanted, and that all of the defendants were to be liable for the amount.   This *eighth* prayer asked the Court to instruct the jury that if they found the plaintiff contracted to furnish them to *Oldenburg & Kelley*, as rapidly as wanted, and failed to do so, etc., then the defendants, Oldenburg & Kelley, are entitled to off-set or recoup against the plaintiff's claim such sum as the jury may find "*the defendants*" lost by reason of such delay, etc.   In addition to the objection that there was no evidence of an agreement to furnish the material to those parties as rapidly as wanted, this would have been very misleading after granting the seventh prayer.   They had already been told that Billings could recoup for such sum as the defendant lost by reason of the delay in furnishing him the materials, and the Court was asked to instruct them that Oldenburg & Kelley could recoup for such sum as they found "the defendants" lost.   If the jury found for the plaintiff against the three defendants, whatever they allowed by way of recoupment against the plaintiff's claim was to reduce the verdict against the three and not against Billings or the firm separately.   If there was any error it was in granting the *seventh* prayer, but the defendants cannot complain of that.

So without further discussion of them, we are of the opinion that there was no reversible error in the rulings of the Court, but for the reason stated above we will dismiss the appeal, instead of affirming the judgment.

*Appeal dismissed, the appellants to pay*
*the costs.*